UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**BODE CAPITAL, LLC,**

    **Plaintiff,**

v.

Case No. 1:22-cv-22469

**GARY BRECKA, SAGE WORKINGER, STREAMLINE MEDICAL GROUP NAPLES, LLC, and RIVERSTONE FAMILY MCD 1, LLC,**

    **Defendants.**

_____/

## COMPLAINT FOR DAMAGES

Plaintiff Bode Capital, LLC ("Plaintiff" or "Bode") hereby alleges as follows:

### NATURE OF ACTION

1. Defendant Gary Brecka was a trusted advisor to Bode regarding the purchase and sale of life settlements. Based on the trust imparted to Brecka, Bode was induced into paying "pre-paid" commissions for policies that Brecka secretly received as kickbacks from his close relationships within the life settlement industry.

2. After Brecka's fraudulent scheme was exposed, the parties entered into a restitution agreement regarding the fraudulently obtained "pre-paid" commissions, which required Brecka, amongst other things, to pay Bode from his wages that were in excess of $10,000 per month until a total of $650,000.00 plus interest was paid back to Bode minus certain credits (the "Restitution Agreement").

3. At or about the time that Brecka entered into the Restitution Agreement, Brecka and his fiancé, Workinger, started Streamline Medical Group Naples, LLC ("Streamline"). Brecka had an educational background in medicine and was trained through Tony Robbins public speaking courses. As a result, Brecka was appointed not only as the CEO of Streamline, but he was the face of the business, producing hundreds of YouTube and other online videos promoting the benefits of the medical anti-aging and other services offered by Streamline. Workinger, on the other hand, acted as the "silent partner" who allowed Brecka to run and build the business.

4. Due to the charismatic nature of Brecka, and his ability to promote the business, Streamline became an instant success. Cognizant of Brecka's contractual obligations to Bode, and in a deliberate attempt to avoid those obligations, Workinger and Brecka conspired with each other to structure Streamline in a such way as to ensure that Brecka was neither an owner of Streamline nor was he compensated as a typical CEO of a two-owner business generating millions of dollars in annual profits despite the fact that Brecka was responsible for the exponential growth of their business. Instead, Brecka was compensated at a depressed amount designed specifically to avoid his contractual obligations to Bode. In reality, however, Brecka enjoyed all of the benefits of his and Streamline's success given that Workinger and Brecka enjoyed the financial benefits equally.

5. The parties also separately entered into a contractual agreement to loan Brecka money for both the purchase and development of his former residence in Naples, Florida. Originally, Bode loaned Brecka, through his entity, Riverstone Family MCD 1, LLC ("Riverstone"), $612,000 in February 2014. The loan was reflected in a written promissory note and was secured by a deed on the property. The two-year note was extended by agreement one additional year. Then, on February 24, 2017, Bode and Riverstone entered into a new promissory note, which included the outstanding interest owed on the original note. The new promissory

note was in the amount of $703,800 (the "Promissory Note") and extended Riverstone's obligation to pay back the loan an additional year. The Promissory Note accrued interest at a rate of five percent (5%) per year with a balloon payment due on February 23, 2018.

6. In order to provide security for Riverstone's repayment of the Promissory Note, Bode and Brecka entered into a Security Agreement whereby Brecka personally guaranteed Riverstone's performance under the Promissory Note. Riverstone, however, did not pay the balloon payment when due on February 23, 2018 nor did Brecka pay the amount due. The Security Agreement allows Bode a security interest on all of Brecka's assets, including his equitable interest in Streamline.

## PARTIES

7. Bode is a Missouri limited liability company with its principal place of business in Dallas, Texas. Bode has three members who reside in California, Texas, and South Dakota, respectively.

8. Brecka is a Florida resident residing in the County of Miami-Dade.

9. Workinger is a Florida resident who resides with Brecka in the County of Miami-Dade.

10. Streamline is a Florida limited liability company with its principal place of business in Naples, Florida. Workinger is the sole member of Streamline although Brecka has an equitable interest therein.

11. Riverstone was at all relevant times a Florida limited liability company with its principal business in Naples, Florida. Bode is informed and believes, and thereon alleges, that Riverstone was a single member LLC owned by Brecka, which has since been administratively dissolved by the State of Florida.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over Bode's claims pursuant to 28 U.S.C. § 1332 (diversity) because Bode and its members and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as a substantial part of the events, omissions, and breach giving rise to Bode's claims, as described herein, occurred in the Southern District of Florida, because Defendants are last known to reside in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

14. Brecka has a long and checkered past. He originally attended medical school, but dropped out in order to attend motivational speaking courses through Tim Robbins.

15. Brecka eventually founds his way into the life settlements industry at its infancy. Given Brecka's charismatic nature, medical background, and relationships with key persons within the industry, Brecka developed what was at one point the largest life settlements brokerage firm in the United States. As a result, Brecka became an industry expert in the purchase and sale of life settlements.

16. In or about late 2012, Bode agreed to retain Brecka as an independent contractor for the purpose of assisting Bode buy and sale life settlements. As part of the parties' agreement, Brecka would share equally with Bode in the profits generated from such sales after Bode was repaid for the monies it advanced to purchase such policies. The parties specifically agreed that Brecka would not receive commissions or any other payments other than from the profits generated from the purchase and sale of policies.

17. Unbeknownst to Bode, Brecka devised a scheme, in conjunction with others, to receive kickbacks from his various relationships in the industry for each policy Bode purchased and sold. Specifically, Brecka falsely represented to Bode

that "pre-paid" commissions were due for each transaction. Based on Brecka's representations, Bode paid these pre-paid commissions, typically in the amount of $50,000 to $150,000 per transaction. Brecka would then receive no less than half and up to three-quarters of the "pre-paid" commissions paid as a kickback from Brecka's relationships in the industry.

18.    Unaware of Brecka's fraudulent scheme, Brecka convinced Bode to loan him $612,000.00 in February 2014 for the acquisition and development of his personal residence in Naples, Florida, which Brecka purchased in the name of Riverstone. The original loan was reflected in a promissory note and deed of trust, which had a second position on the property.

19.    The original promissory note had a term of two years. The parties' extended the term by an additional one year at Brecka's request.

20.    On February 24, 2017, Brecka and Riverstone entered into a new promissory note, which superseded the original note. The Promissory Note provided for interest to accrue at five percent (5%) per annum as well as an additional one-year term. A balloon payment of all principal and interest accrued was due on February 23, 2018. A true and correct copy of the Promissory Note is attached hereto as **Exhibit A** and incorporated herein by reference.

21.    On May 6, 2017, Brecka and Riverstone, on the one hand, and Bode, on the other, entered into a Security Agreement to secure Riverstone's repayment of the Promissory Note. A true and correct copy of the Security Agreement is attached hereto as **Exhibit B** and incorporated herein by reference. Among other things, the Security Agreement provided Bode with a security interest in all of Brecka's assets and it obligated Brecka to pay all of the principal and interest due under the Promissory Note.

22.    Shortly thereafter, in May 2017, as a result of a similar fraudulent "pre-paid" commission scheme that Brecka had employed with another group of

investors, Brecka came clean to Bode, admitting his fraudulent scheme. Over the next several months, Bode and Brecka negotiated the terms of Brecka's restitution to Bode. Bode and Brecka eventually entered into the Restitution Agreement on July 1, 2017. A true and correct copy of the Restitution Agreement is attached hereto as **Exhibit C** and incorporated herein by reference.

23. The Restitution Agreement required Brecka to repay Bode a sum of $650,000 plus interest. Pursuant to the Restitution Agreement, Brecka agreed to transfer an interest he owed in a certain asset for which Brecka would receive a credit of $150,000. Brecka transferred that asset to Bode.

24. The balance of the funds were to be paid through various potential ventures as well as any income Brecka earned that exceeded $10,000 per month.

25. Bode was aware at the time the parties entered into the Restitution Agreement that Brecka and Workinger had just started a new anti-aging business called Streamline. During the parties' negotiations, Brecka and Workinger both repeatedly represented to Bode that Brecka would not be involved in the business, but rather, the business would be owned and operated exclusively by Workinger. Workinger and Brecka both knew that these representations were false and that they were made in order to give Bode the false impression that Brecka would not benefit financially from Streamline.

26. In reality, both Workinger and Brecka intended for Brecka to be the primary operator of the business. Specifically, Brecka was appointed as the CEO of Streamline and he became the face of the business. Leveraging his medical and motivational speaking background, Brecka regularly prepared YouTube and other social media videos promoting Streamline's business. As a directly result of Brecka's efforts, Streamline grew from a startup to generating millions of dollars in annual profits by 2021 before selling Streamline to 10X Health System ("10X").

27. Unbeknownst to Bode, Brecka and Workinger structured Streamline so that Brecka had no documented interest in Streamline nor did Brecka earn a salary of more than $10,000 per month. Instead, Brecka and Workinger conspired with each other and Streamline to divert Brecka's equitable interest and salary to Workinger so as to conceal those assets from Bode.

28. Bode is informed and believes, and thereon alleges, that Workinger and Brecka continued their charade in their sale of Streamline to 10X and in their compensation agreements with 10X after the sale. Bode is informed and believes, and thereon alleges, that 10X was made aware of this charade and has been complicit in it ever since. Alternatively, within the last five years, Brecka has earned income in excess of $10,000 per month, but has failed or refused to pay Bode as required by the Restitution Agreement.

## FIRST CAUSE OF ACTION

### (Breach of Promissory Note Against Riverstone)

29. Bode incorporates paragraphs 1 through 28 as if set forth fully herein.

30. Bode and Riverstone entered into the Promissory Note in which Bode loaned Riverstone $703,800. Riverstone was obligated to repay the Promissory Note with interest no later than February 23, 2018.

31. Bode fully performed its obligations except for those that were excused.

32. Riverstone breached the Promissory Note by failing to repay the monies owed thereunder on or before February 23, 2018.

33. As a result of Riverstone's breaches, Bode has suffered losses in an amount of $703,800 plus interest at five percent (5%) per annum. To date, interest has accrued in the total amount of $191,761.40. Interest will continue to accrue at a rate of $96.41 per day.

34. In addition to the principal and interest outstanding, Bode is also entitled to reasonable attorneys' fees as provided by the Promissory Note.

## SECOND CAUSE OF ACTION

### (Breach of Security Agreement Against Brecka)

35. Bode incorporates paragraphs 1 through 34 as if set forth fully herein.

36. Bode and Brecka entered into the Security Agreement in which Brecka agreed to pay Riverside's obligations under the Note.

37. Bode fully performed its obligations except for those that were excused.

38. Brecka breached the Security Agreement by failing to repay the monies Riverstone owed under the Promissory Note on or before February 23, 2018.

39. As a result of Brecka's breaches, Bode has suffered losses in an amount of $703,800 plus interest at five percent (5%) per annum. To date, interest has accrued in the total amount of $191,761.40. Interest will continue to accrue at a rate of $96.41 per day.

40. In addition to the principal and interest outstanding, Bode is also entitled to reasonable attorneys' fees as provided by the Security Agreement.

## THIRD CAUSE OF ACTION

### (Breach of Restitution Agreement Against Brecka)

41. Bode incorporates paragraphs 1 through 28 as if set forth fully herein.

42. Bode and Brecka entered into the Restitution Agreement in which Brecka agreed to repay Bode for some of the pre-paid commissions he fraudulently obtained from Bode without Bode's knowledge or consent.

43. Bode fully performed its obligations except for those that were excused.

44. Brecka breached the Restitution Agreement, and the implied covenant of good faith and fair dealing implied therein, by structuring his compensation with Streamline and 10X in such a way so as to avoid having to pay Bode pursuant to the Restitution Agreement. Not only was Brecka substantially underpaid for his role as CEO of Streamline, but Brecka diverted both his compensation and his ownership interest, including his one-half interest in the monies paid by 10X for an interest in

Streamline, to Workinger in order to avoid his contractual obligations to Bode. Nonetheless, Brecka enjoyed the fruit of his labors due to the fact that Workinger is his fiancé, she paid for their expenses, and afforded Brecka and his children a lifestyle based on the work Brecka performed for Streamline and 10X.

45. Alternatively, Bode is informed and believes, and thereon alleges, that Brecka's current salary with 10X exceeds $10,000 per month, however, Brecka has failed and refused to pay Bode any monies under the Restitution Agreement as required thereby.

46. As a direct result of Brecka's breach of the Restitution Agreement, Bode has suffered losses in an amount to be determined at trial.

47. In addition to compensatory damages, Bode is also entitled to pre-and post-judgment interest as well as reasonable attorneys' fees as provided by the Restitution Agreement.

## FOURTH CAUSE OF ACTION

**(Declaratory Judgment Against Workinger, Brecka, and Streamline)**

48. Bode incorporates paragraphs 1 through 28 as if set forth fully herein.

49. Under the Security Agreement, Bode has a secured interest in all of Brecka's assets. Under the Restitution Agreement, Bode has a contractual right to thirty (30%) of all of Brecka's income in excess of $10,000 per month until the principal balance plus interest accrued thereunder is paid in full.

50. A genuine controversy has arisen between the parties regarding their respective rights and obligations under the Security Agreement and the Restitution Agreement.

51. Bode contends that Brecka was and is an equitable owner of Streamline, that as an equitable owner, Brecka was and is entitled to one-half of the profits Streamline generated as well as one-half of all monies paid by 10X for the sale, and that Brecka was and is entitled to one-half of the income earned

by Workinger from Streamline and 10X. Bode further contends that it is entitled to thirty percent (30%) of all such income under the Restitution Agreement.

52. Bode further contends that Brecka maintains an ongoing equitable interest in Streamline and 10X equal to one-half of Workinger's interest therein. As a result, Bode contends that it has the right to place a security interest on all such interest under the Security Agreement.

53. Bode is informed and believes, and thereon alleges, that Brecka, Workinger, and Streamline dispute the ongoing rights and obligations of the parties under the Restitution Agreement and the Security Agreement.

54. Declaratory judgment is necessary and appropriate to resolve certain substantial controversies between the parties and to define the parties' respective duties, obligations, and rights under Restitution Agreement and the Security Agreement.

55. Bode requests that court issue a judicial declaration that sets forth the parties' respective duties, obligations, and rights under the Restitution Agreement and the Security Agreement.

## **PRAYER**

WHEREFORE, Bode prays for judgment against Defendants as follows:

1. For compensatory damages against Riverstone in the amount of no less than $895,561.40 pursuant to the Promissory Note, plus daily interest at $96.41 per day as of the date of this Complaint;

2. For compensatory damages against Brecka in the amount of no less than $895,561.40 pursuant to the Security Agreement, plus daily interest at $96.41 per day as of the date of this Complaint;

3. For compensatory damages against Brecka in the amount to be proven at trial pursuant to the Restitution Agreement, plus pre-judgment interest;

4. For post-judgment interest;

5. For reasonable attorneys' fees as provided by the Promissory Note, Security Agreement, and Restitution Agreement;

6. For costs of suit incurred; and

7. For such other and further relief as the Court may deem just and proper.


Dated:  August 5, 2022				Respectfully submitted,


						McKOWN BAILEY
						2525 Ponce de Leon, 12th Floor
						Coral Gables, FL 33134
						Telephone:  (949) 858-3200
						E-Mail: aaron@mckownbailey.com

						By:  /s/ Aaron M. McKown                       .
						        Aaron M. McKown
						        Florida Bar No. 1002008
						*Attorneys For Plaintiff*
						BODE CAPITAL, LLC